## ROGERS v. BRYAN. (No. 8604.) *

(Court of Civil Appeals of Texas. Galveston. Feb. 26, 1925. Rehearing Denied March 19, 1925.)

**1. Venue ☞5(2)—Suit on note and to foreclose vendor's lien on land securing it properly brought in county where land is, though all parties reside in another county.**

Under Rev. St. art. 1830, subd. 12, suit on note and to foreclose vendor's lien on land securing it is properly brought in county wherein land is situated, though all parties reside in another county.

**2. Husband and wife ☞232(3)—Execution of valid vendor's lien by wife to surety on note executed by her and husband held shown.**

Evidence *held* to show that wife executed and delivered valid vendor's lien to surety on note executed by her and husband as security for repayment of amount paid by him to holder to release attachment lien.

**3. Husband and wife ☞159, 171(1)—Wife may not be surety for husband; wife may mortgage or pledge separate property to secure husband's debt.**

Wife may not incur personal liability as surety for husband, but may mortgage or pledge her separate property to secure his debt.

**4. Husband and wife ☞156—Wife's note to surety on note executed by her and husband, and renewal contract to pay it, held supported by sufficient consideration.**

Note executed by wife to surety on note executed by her and her husband, and her contract, made after husband's death, to pay note, with knowledge of surety's contention that he had valid vendor's lien on land to secure repayment of amount paid to holder of joint note, *held* supported by sufficient consideration.

**5. Judgment ☞256(6) — General verdict for plaintiff, in action on note, and to foreclose lien on land, held sufficient to support judgment.**

General verdict for plaintiff, in suit on note and to foreclose vendor's lien on land securing it, *held* sufficient to support judgment in full amount sued for and foreclosing lien, though it did not find amount due on note nor existence of lien.

**6. Trial ☞331—Verdict may be rendered certain by reference to pleadings.**

Verdict may be rendered certain by reference to pleadings.

Appeal from District Court, Brazoria County; M. S. Munson, Judge.

Suit by Lewis R. Bryan against Josephine B. Rogers. Judgment for plaintiff and defendant appeals. Affirmed.

John B. Warren, of Houston, for appellant. Bryan, Dyess & Colgin and Lewis R. Bryan, all of Houston, for appellee.

LANE, J. This suit was brought by appellee, Lewis R. Bryan, against appellant, Josephine B. Rogers, to recover upon a note executed and delivered to him by said Josephine B. Rogers and her husband, C. J. Rogers, deceased, for the sum of $1,863.31, and to foreclose a vendor's lien upon land situated in Brazoria county, Tex., given to secure the payment of said note.

As appellant has made a statement of the nature of the case, and the result of the suit which is approved by appellee, we adopt the same as our own. It is as follows:

"It was alleged that the note sued on was payable at the Lumberman's National Bank, Houston, Texas. It was alleged that C. J. Rogers was dead and died insolvent, and there was no administration on his estate. Plaintiff alleged that after the death of C. J. Rogers his surviving widow, the defendant, sought and obtained an extension of said note so that it should become payable on or before November 1, 1920. The defendant filed a plea of privilege setting up that she was a resident of Harris county, Tex., at the time of the filing of the plea and at the time of the filing of the suit, and that the district court of Harris county had jurisdiction. The defendant also excepted to the plaintiff's petition, for the reason that it showed on its face that the venue of the suit was in Harris county, Tex., in that the petition showed that the note was payable at the Lumberman's National Bank, Houston, Texas. The plea of privilege was controverted by the plaintiff upon the ground that inasmuch as it was a suit to foreclose a lien upon the land situated in Brazoria county, that such suit came within the terms of subdivision 12, of article 1830, of the Revised Statutes.

"The defendant further alleged that the property in controversy was the separate property of herself at the time that it was conveyed by deed by the plaintiff to the defendant, and that she was a married woman at that time and at the time of the execution of the note sued upon and without capacity to contract in the manner and way alleged and without capacity to fix a lien upon her separate property in the manner and way alleged; that the debt evidenced by the note was the debt of her deceased husband, C. J. Rogers, and she did not become personally liable thereon by the reason of having signed the same, and same was without consideration. The defendant further alleged that the extension agreement was without consid-

eration and not binding upon the plaintiff or the defendant.

"The trial court overruled the defendant's plea of privilege to which the defendant excepted, and also overruled all of the exceptions and demurrers, to which the defendant excepted. The trial was had with a jury and the court gave a peremptory instruction to the jury in favor of the plaintiff, and denied the request of the defendant for a peremptory instruction. The defendant excepted to the action of the court in giving a peremptory instruction in favor of the plaintiff. The court rendered judgment on the verdict in favor of the plaintiff in the full amount sued for, and foreclosed the lien upon the land in controversy and ordered it sold," etc.

From the judgment so rendered Mrs. Josephine B. Rogers has appealed. From the unindexed and almost unintelligible statement of facts filed in this case, we adduce the following facts:

It is shown by the undisputed facts that on the 1st day of February, 1914, C. J. Rogers and wife, Josephine B. Rogers, as principals, and Lewis R. Bryan, as surety, executed and delivered to one A. A. Rugeley their two promissory notes, the first for $1,-000, and the other for $1,348.50, which were due and payable one and two years from their dates, respectively; that said notes becoming due before the 27th day of August, 1917, and remaining unpaid, A. A. Rugeley was pressing the makers thereof for collection; that Mrs. Josephine B. Rogers being informed by her husband, C. J. Rogers, that his creditors were threatening to take her property for his debts, did on the 27th day of August, 1917, joined by her husband, execute a deed by the terms of which she conveyed the land involved in this suit, which was her separate estate, to her sister, Mrs. Fannie McNeill, which said deed she gave to her husband, C. J. Rogers, who filed it for record in Brazoria county where the land is situated; that some time prior to the 5th day of November, 1917, A. A. Rugeley brought suit on said two notes against C. J. and Josephine B. Rogers as principals and Lewis R. Bryan as their surety, and against Mrs. Fannie McNeill as a fraudulent holder of the title to the land of Mrs. Rogers, and on the 6th day of November, 1917, he sued out a writ of attachment and had the same levied upon the land involved in this suit.

While the Rugeley suit was pending and on the 8th day of May, 1918, L. R. Bryan wrote a letter addressed to Mr. and Mrs. C. J. Rogers, Box 66, R. F. D. No. 5, San Antonio, regarding said suit in which he said that he had, on April 27th, written to them in reply to the letter of Mr. Rogers of April 26th suggesting that the land which had been conveyed to Mrs. McNeill should be, by Mrs. McNeill, conveyed to him, and that then he would convey the same to Mr. Rogers subject to a vendor's lien note to be given by Mr.

and Mrs. Rogers to him representing the amount due Rugeley and the cost of the suit. And he also said that the case had been passed pending settlement, and that he could not understand why they did not advise him whether they would take a deed back from Mrs. McNeill to Mrs. Rogers, or whether they would prefer to have Mrs. McNeill convey the land direct to him; that while the proposition made then covered both the land in Brazoria county and Lee county, the proposition made in said letter applies to the Brazoria county land only. This letter was registered. On May 13th Mr. Bryan received a letter from C. J. Rogers acknowledging receipt of the letters of inquiry written by Bryan. In this letter he asked Mr. Bryan to write him and give him the amount due on the Rugeley debt. A postscript was added to this letter as follows: "Please send the papers direct to Mrs. McNeill. Josephine Rogers."

After Rugeley brought his suit and fixed his lien on the land by the levy of the writ of attachment sued out by him, to wit, on or about the 1st day of May, 1918, Lewis R. Bryan, the surety on the notes sued upon, paid A. A. Rugeley the sum of $1,863.31, the amount still due and unpaid on said notes, inclusive of $169.62 attorneys fees as provided in the notes and $107.31 costs incurred in the suits. Such payments being made the suit was, by agreement of the parties, dismissed. On the 27th day of May, 1918, Mrs. Fannie McNeill, joined by her husband, executed and delivered to Lewis R. Bryan a quitclaim deed, by which she conveyed the land involved in this suit to Bryan. On the 10th day of June, 1918, Lewis R. Bryan executed and delivered to Mrs. Josephine B. Rogers a deed of conveyance which, leaving off the formal parts, is as follows:

"Know all men by these presents that I, Lewis R. Bryan, of said state and county, for and in consideration of the sum of eighteen hundred, sixty three and 31/100 ($1,863.31) dollars to be paid, as is evidenced by a vendor's lien note for said amount of this date, executed by Mrs. Josephine B. Rogers, joined by her husband, C. J. Rogers, said note being of even date herewith, and payable on or before two (2) years after date, with 8 per cent. interest per annum thereon from date and providing for 10 per cent. attorneys fees, in case said note is collected through any court or by suit, have granted, sold, and conveyed, and by these presents do grant, sell and convey unto the said Mrs. Josephine B. Rogers, of Harris county, Tex., but who is temporarily residing in Bexar county, Tex., to her separate estate, use and benefit, all of the interest which I acquired in and to a certain tract of 500 acres of land out of the A. Mitchell league in Brazoria county, Tex., by virtue of a deed from Mrs. Fannie C. McNeill and husband, dated the 27th day of May, 1918, and recorded in volume 148, p. 353 of the Record of Deeds of Brazoria county, Texas, to which reference is had, the said interest in said land being all of the in-

terest which was owned by the said Mrs. Josephine B. Rogers (formerly Josephine B. Cox) in said tract of 500 acres, and is the same 500 acres of land which is known as the Champion place, in the lower part of the upper one-half of the said Asa Mitchell league, see deed to Dina Volbaum, recorded in Deed Book M, page 693, Brazoria County Deed Records. To have and to hold the said land and premises, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said Mrs. Josephine B. Rogers, her heirs and assigns forever. But it is expressly understood and agreed that the vendor's lien is retained upon the above-described and conveyed property, to secure the payment of said note. Witness my hand at Houston, Tex., this the 10th day of June, A. D. 1918."

The note called for in the deed from Bryan to Rogers reads as follows:

"$1,863.31. San Antonio, Texas, June 10th, 1918. On or before two years after date we promise to pay to Lewis R. Bryan or order the sum of eighteen hundred sixty-three and $31/100$ dollars, with interest thereon from date until paid at the rate of 8 per centum per annum, the interest payable as it accrues; both principal and interest payable at Lumberman's National Bank at Houston, Texas, for value received. This note is given in part payment for a certain lot or parcel of land situated in Brazoria county, Tex., being my interest in 500 acres of land known as the Champion place, in the lower part of the upper one-half of the Asa Mitchell league, this day conveyed to Mrs. Josephine B. Rogers by Lewis R. Bryan, and to secure the payment of same according to the tenor hereof a vendor's lien is retained in said conveyance and is hereby acknowledged. All past-due interest on this note shall bear interest at the rate of 8 per centum per annum after the annual maturity thereof. This note is this day given by Mrs. Josephine B. Rogers and C. J. Rogers as part of the purchase price for said above-mentioned property, and it is understood and agreed that failure to pay this note or any installment of interest hereon when due shall at the election of the holder of all of said series of notes, or of any one of them, mature all the said notes, and they shall become at once due and payable, and the vendor's lien herein mentioned shall become subject to foreclosure proceedings as the holder may elect. And it is hereby specially agreed that, if this note is placed in the hands of an attorney for collection, or if collected by suit, or through the probate court, we agree to pay 10 per cent. additional on the principal and interest then due thereon as attorney's fees. [Signed] Josephine B. Rogers. C. J. Rogers."

On the 10th day of June, 1918, the date on which the above deed and note were executed, Mrs. Josephine B. Rogers executed and delivered to Lewis R. Bryan the following instrument:

"San Antonio, Texas, June 10, 1918. Messrs. J. C. McNeill, Louis J. Wilson, M. B. Williamson, Executors of the Last Will of C. R. Cox, Deceased—Gentlemen: If in the course of the administration of Judge's Cox's estate you should as executors sell that part of my interest in the estate which is in your hands as executors, viz. the 500-acre tract in the A. Mitchell league, known as the Champion place, in Brazoria county, Texas, you will please pay the proceeds of such sale to Lewis R. Bryan, of Houston, Texas, for credit on my vendor's lien note, of even date herewith, as the land had been conveyed by me to my sister, Mrs. McNeill, and she conveyed the land to Mr. Bryan, and he has conveyed the same to me, reserving a vendor's lien thereon. Very truly yours, [Signed] Josephine B. Rogers."

On the 31st day of July, 1920, Mrs. Josephine Rogers and Lewis Bryan entered into a written agreement as follows:

"County of Harris and State of Texas. Know all men by these presents that whereas, on, to wit, June 10, 1918, Lewis R. Bryan conveyed to Mrs. Josephine B. Rogers all of his interest in five hundred (500) acres of land known as the Champion place, in the lower part of the upper one-half of the Asa Mitchell league, situated in Brazoria county, Texas, for which Mrs. Josephine B. Rogers, joined by her husband, C. J. Rogers, executed a note to the said Bryan of said date for the sum of eighteen hundred sixty-three and $31/100$ ($1,863.-31), bearing interest from date until paid at the rate of 8 per cent. per annum, payable two (2) years after date, and reserving a vendor's lien both in the deed and in said note upon said land, and the said Mrs. Rogers also gave the said Bryan an order on Louis J. Wilson and his associate executors of the estate of C. R. Cox for whatever part of the estate coming to Mrs. Rogers, to be credited on said note by the said Bryan; and whereas, said note is now past due, and Mrs. Rogers desires that the time of payment be extended, and her said husband, C. J. Rogers, having died on the 4th day of June, 1920, and it is mutually agreed between the said Bryan and the said Mrs. Rogers that the time of payment of said note be extended so as to be payable on or before November 1, 1920: Now, therefore, I, Josephine B. Rogers, a feme sole, do hereby agree to pay said note to the said Bryan according to its legal effect and tenor on or before November 1, 1920.

"Witness my hand at Houston, Texas, this the 31st day of July A. D. 1920. [Signed] Josephine B. Rogers. Lewis R. Bryan."

It was shown that the deed executed to Mrs. McNeill by Mrs. Rogers was without consideration and that it was accepted by Mrs. McNeill with the understanding that the land would be reconveyed to Mrs. Rogers, on her request.

It was also shown that C. J. Rogers, the husband of Mrs. Josephine Rogers, was dead at the time the renewal agreement above set out was executed; that his estate was insolvent; and that at such time Mrs. Rogers was a feme sole.

Mrs. Josephine Rogers testified that she had not requested Mrs. McNeill to convey the land to Mr. Bryan; that she was living in San Antonio on the 17th day of November, 1917, or somewhere about that time, and that she received communications from Mr.

Bryan in reference to his making a deed to her at that place; that the signature to the postscript to the letter of May 13, 1918, saying, "Please send the papers to Mrs. McNeill" looks like her signature; that it is supposed to be her signature and that she could not say whether it is or not but did not think it was.

Mr. Lewis R. Bryan testified that the first time he learned that Mrs. Rogers and her husband had conveyed the land involved, to Mrs. McNeill, was shortly after Rugeley had brought his suit against Mr. and Mrs. Rogers and himself; that after he learned of such conveyance he had some correspondence with both Mr. Rogers and Mrs. Rogers; that the only one he could now find signed by Mrs. Rogers is the one containing the notation, "Please send papers direct to Mrs. McNeill;" that he knew the handwriting of Mrs. Rogers and that the signature "Josephine Rogers" signed to the notation was written by Mrs. Rogers; that he prepared the deed to be executed by Mrs. McNeill to him, and sent it to her by mail.

On May 17, 1918, Mrs. McNeill wrote Mr. Bryan as follows:

"Dear Sir: Your letter and quitclaim deed received yesterday. I do not see my way to signing this deed, since I never sanctioned the deed conveying this land to me, but with Mrs. Rogers' authority I will reconvey it to her, or you. Since I have put it in writing that I did not pay $1,500, or any part of that sum, for that conveyance, and did not lay any claim to it, I should think that alone would render that instrument invalid. I am anxious to get this settled and to be released from any connection with it, and wish to do what is right by all parties concerned. I've just written Mrs. Rogers regarding this matter, and will be prepared to sign this paper if it is her wish, though I said I thought I'd made it clear that I had no claim to the land in question. Very respt. Fannie C. McNeill, Spur, Texas."

And on the 27th day of May she wrote Mr. Bryan as follows:

"Dear Mr. Bryan: Having received the necessary authority from Mrs. Rogers, I am to-day mailing the quitclaim to her land, also the transfer. I hope you understand that I had no objection to signing this paper, other than that considering it entirely her affair, and having had no instruction from her to that effect, I felt I should first get some information from her. In fact the day I had your letter I also had one from her and she made no mention of having made any arrangement with you. I hope this reaches you in time to adjust this satisfactorily. Sincerely, Fannie C. McNeill, Spur, Texas."

The land involved is an undivided interest of Mrs. Josephine Rogers, in the 500 acres, described in the several deeds hereinbefore copied, which she inherited from her deceased father and mother, C. R. Cox and Mary Cox. J. C. McNeill, Louis J. Wilson and M. B. Williamson were the executors of the will of C. R. Cox, who it seems were clothed with power to sell the 500 acres, of which the land involved in this suit is a part, under certain contingencies and they are the parties who were instructed by Mrs. Rogers, by the instrument executed by her on the day she and her husband executed the note sued on, to pay her part of the proceeds of any sale they might make of said land to Mr. Bryan.

The reasons assigned by appellant as cause for a reversal of the judgment are: First, that the court erred in overruling her plea of privilege; second, that the court erred in not sustaining her suggestion of the disqualification of the court to try the cause in that brothers of the trial judge were claiming an interest in the subject-matter of the suit, adverse to that of the plaintiff and defendant; that said brothers had a suit pending in the trial court against the heirs of Asa Mitchell to recover an interest in the land in controversy, in which Josephine B. Rogers is a party; third, that the judgment is contrary to law and is not supported by a verdict of the jury, in that the verdict does not find the amount due upon the note sued upon, nor does it find the existence of a lien on the land involved; fourth, that the court erred in peremptorily instructing a verdict for the plaintiff, in that the undisputed evidence showed that the land in controversy was the separate property of appellant at the time the legal title was placed in appellee and that appellee took said title in trust for appellant, who was at such time a married woman, with the purpose and intention of conveying the same to the separate use of appellant so as to place the legal title thereto in the name of appellant, and that the signing of the purported vendor's lien note sued upon, was not a legal obligation against appellant, by reason of her coverture, and in that the granting of a lien upon appellant's land to secure the note sued upon, which evidenced a debt of her husband, was invalid, in that appellant was at the time a married woman, and said lien was not granted by an instrument in writing in which appellant's husband joined, and which was acknowledged by appellant in the manner as required by law; fifth, that the judgment is contrary to law in this, the undisputed evidence showed that the plaintiff took the title to the land in controversy knowing that it was the separate property of the defendant for the purpose only of making a reconveyance thereof to defendant in her separate right, and that the plaintiff paid nothing of value for said deed from Mrs. McNeill to him but accepted said conveyance of the legal title to said land from Mrs. McNeill in trust for defendant, and with the avowed purpose of conveying the same to defendant in her separate right. The undisputed evidence further showed that at the time of the execution of the note

sued upon, and the granting of a lien on the land in controversy, the defendant was a married woman and without capacity to contract; sixth, that the judgment is contrary to law in so far as it is based upon the extension agreement pleaded by the plaintiff and introduced in evidence in that the undisputed evidence showed that the defendant by such agreement did not agree to pay interest on said note from its maturity date until the date of the extension, to wit, November 20, 1920, and by said extension agreement, the defendant might pay the note sued upon at any time prior to the time to which it was extended, and that there was no consideration for the plaintiff's promise to extend; nor did the evidence show that the legal representatives of the estate of C. J. Rogers, deceased, the principal in the note had joined in or agreed to such extension; and the evidence showed there was no consideration for the promise of this defendant to pay said note.

We will first dispose of the contention that the trial judge was disqualified to entertain the suit, in that he was related within the third degree to parties, who had an interest in the subject-matter of the suit. There is absolutely nothing in the entire record to support the contention. If, as a fact, any of the parties to the suit are related to the trial judge, or that any one related to him had an interest in the matter of the suit, such fact is not remotely disclosed by the record.

[1] We do not think the court erred in overruling appellant's plea of privilege. The suit of the plaintiff was instituted in the district court of Brazoria county, to recover upon a note and for a foreclosure of a lien on land situated in Brazoria county. Under the express provisions of subdivision 12 of article 1830, Rev. Civil Statutes, fixing venue of suits to foreclose lien on land, suits to recover on notes and to foreclose a trust deed, or mortgage given to secure their payment, may be maintained in the county where the land is situated, though all parties reside in another county. We have reached the conclusion that the lien, sought to be foreclosed, was a valid lien given by appellant to appellee to secure the payment of the note sued upon, and that suit was properly brought and maintained in Brazoria county. McGhee v. Shely (Tex. Civ. App.) 216 S. W. 422; Barcus v. Case Threshing Mach. Co. (Tex. Civ. App.) 197 S. W. 478.

[2] Pretermitting a discussion as to whether the debt due Rugeley, for which the note executed by C. J. Rogers and Josephine Rogers as principals and Lewis R. Bryan as surety was given, was a debt incurred by C. J. Rogers in the improvement of the separate estate of Mrs. Rogers, and conceding that such debt was the community debt of Rogers and wife, Josephine Rogers, we are still of the opinion that the facts clearly show that appellant, Mrs. Josephine Rogers, had executed and delivered to appellee, Lewis R. Bryan, a valid lien upon the land in question to secure the note sued upon. As we have already shown, Mrs. Rogers and husband had executed and delivered to A. A. Rugeley two notes, for the aggregate sum of $2,348.50; that fearing that Rugeley would undertake to seize upon her land for the payment of said notes, Mrs. Rogers, joined by her husband, conveyed and placed the legal title to her land in her sister, Mrs. McNeill; that thereafter Rugeley brought suit upon said notes and caused the issuance of an attachment, which was levied upon said land, claiming that the debt sued for was such as would authorize a sale of said land for its payment; that after such suit was filed and levy made, L. R. Bryan, who was a surety on said Rugeley notes, by virtue of an agreement with C. J. Rogers, husband of Mrs. Rogers, paid off the Rugeley debt, and the suit of Rugeley was dismissed and the attachment lien, whether valid or not, was thereby released.

It is shown that the payment made by Bryan to Rugeley was made after he had addressed certain letters to Rogers and wife in which he in effect told them that the settlement of the Rugeley suit was being held up awaiting their answer to his letters inquiring as to whether they would have Mrs. McNeill convey the land to him, so that he might then convey the same to Mrs. Rogers, subject to a vendor's lien to be retained by him securing the sum, which he would be required to pay Rugeley, and after he had received the letter in reply to his inquiries, which contained the notation: "Please send the papers to Mrs. McNeill. Josephine Rogers."

We think it is clearly shown by the facts and circumstances hereinbefore stated, that before the deed was executed by Mrs. McNeill to Bryan and before Bryan conveyed the land to Mrs. Rogers and before Rogers and wife executed and delivered the note sued on to Bryan, it was understood and agreed by and between Mr. and Mrs. Rogers and Bryan that, if Bryan would pay the Rugeley debt and relieve the land of Mrs. Rogers from any possible incumbrance by reason of the Rugeley suit, that the land would be conveyed to Bryan either directly by Mrs. McNeill or to Bryan from Mrs. McNeill, through Mrs. Rogers, and that Bryan was then to convey the same back to Mrs. Rogers in such manner as to fix a lien thereon in favor of Bryan, to secure the repayment to him, the amount paid by him to Rugeley.

[3] It is well settled that while a married woman may not incur a personal liability as a surety for her husband, she may mortgage or pledge her separate property to se-

cure a debt incurred by her husband. In such case her property merely stands in the relation of surety for the debt. Red River Nat. Bank v. Ferguson, 109 Tex. 287, 206 S. W. 923; Bird v. Bird (Tex. Civ. App.) 212 S. W. 253.

We think that the acts taken by the parties in consummating the aforesaid agreement should be held to have constituted a mortgage or pledge of Mrs. Rogers, of her property to secure the repayment to Bryan, the money which he paid in satisfaction of the Rugeley debt. If, however, it may be said that there is a conflict in the evidence when taken as a whole, as to whether Mrs. Rogers authorized Mrs. McNeill to . convey the legal title to the land to Bryan, we are, nevertheless, of the opinion that the undisputed evidence shows that Mrs. Rogers, joined by her husband, did in writing fix a lien, in favor of Bryan, upon the land to secure the money paid by him to Rugeley. The undisputed facts show, as before stated, that Mrs. Rogers, joined by her husband, had conveyed the legal title to the land to Mrs. McNeill, who in turn had conveyed the same to Bryan; that after such title had been conveyed to Bryan, Mrs. Rogers, with full knowledge thereof, joined by her husband, agreed with Bryan that he was to convey the title to the land to her, in consideration for which she and her husband would execute and deliver to Bryan the note sued on, the payment of which was to be secured by the retention by Bryan of a vendor's lien on the land; that in pursuance of such agreement Bryan did execute and deliver to Mrs. Rogers his deed conveying to her the title to said land retaining therein a vendor's lien to secure the note mentioned, and that Mrs. Rogers and her husband, in accordance with said agreement, did execute and deliver to Bryan the note mentioned, which is the note sued on, and in which it is recited that the vendor's lien was retained to secure its payment. It was also shown that long after the death of C. J. Rogers, husband of Mrs. Josephine Rogers, and while Mrs. Rogers was a feme sole, she, by an instrument in writing, hereinbefore set out, renewed her promise to pay said note according to its legal effect and tenor.

[4] We think it is shown that there was a sufficient consideration to support the execution of the note and the renewal contract above mentioned. Mrs. Rogers knew at the time Bryan conveyed the land to her, and at the time she and her husband executed and delivered to him said note, and at the time she executed the renewal contract, that Bryan was contending that she, Mrs. Rogers, had authorized Mrs. McNeill to convey the land to him and that by the various transactions between him and her he had a valid lien upon the land.

[5] We now come to a consideration of the contention of appellant that the judgment is not supported by the verdict of the jury in that the verdict does not find the amount due upon the note sued upon nor does such verdict find the existence of a lien on the land. There is no merit in such contention.

[6] The suit was upon a note, a liquidated demand and for a foreclosure of a described lien upon a certain described land. The verdict of the jury was a general verdict as follows:

: "We the jury find for plaintiff, Lewis R. Bryan."

The only inference that can be drawn from such verdict is that the jury found that the plaintiff was entitled to a recovery of the sums shown to be due upon the note sued upon, and to the foreclosure of the lien pleaded and described in said note, which was also pleaded. It is well settled that a verdict may be rendered certain by reference to the pleadings. Newcomb v. Walton, 41 Tex. 318; Wood v. Welder, 42 . Tex. 396; Griffin v. Chadwick, 44 Tex. 406; Roberts v. Johnson, 48 Tex. 133; Martin Brown Co. v. Perrill, 77 Tex. 199, 13 S. W. 975; Lopez v. Garcia (Tex. Civ. App.) 221 S. W. 665; Brown v. Fechner (Tex. Civ. App.) 159 S. W. 461.

For the reasons pointed out, the judgment is affirmed.

Affirmed.